**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

HOSSEIN FALLAH BEJARBANEH,

     Petitioner,

v.

                                     No. 1:26-cv-01451-MLG-GJF

MARKWAYNE MULLIN, in official capacity
as Secretary of United States Department of
Homeland Security; UNITED STATES
DEPARTMENT OF HOMELAND
SECURITY; TODD BLANCHE, in his official
capacity as Senior Official Performing the
Duties of the Attorney General of the United
States; TODD M. LYONS, in his official
capacity as Senior Official Performing the
Duties of the Director of United States
Immigration and Customs Enforcement; MARY
DE ANDA YBARRA, in her official capacity
as Field Office Director of U.S. Immigration
and Customs Enforcement, Enforcement and
Removal Operations for the El Paso Field
Office; GEORGE DEDOS, in his official
capacity as Warden of the Torrance County
Detention Facility,

     Respondents.

**MEMORANDUM OPINION AND ORDER PARTIALLY GRANTING PETITION
AND DIRECTING RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER**

Petitioner Hossein Fallah Bejarbaneh, an Iranian citizen, was detained nearly eleven

months ago pursuant to a final removal order. He is currently being held at the Torrance County

Detention Facility in Estancia, New Mexico. Doc. 4 at 1. Bejarbaneh filed a habeas petition

("Petition") wherein he asserts his detention violates the Immigration and Nationality Act ("INA"),

8 U.S.C. §§ 1101-1537, and the Due Process Clause of the Fifth Amendment to the United States

1

Constitution. *See generally* Doc. 4. For the reasons addressed below, the Court orders Bejarbaneh's immediate release and denies his other requested relief.

**FACTUAL BACKGROUND**

Bejarbaneh entered the United States on an F-1 student visa on July 23, 2014, and he enrolled as a graduate student at the New Mexico Institute of Mining and Technology. Doc. 4 at 2; Doc. 10-3 at 1. In approximately 2016, Bejarbaneh applied for withholding of removal and began pursuing permanent residency. *Id.* Five years later, and after Bejarbaneh's student visa had expired, an immigration judge ("IJ") denied Bejarbaneh's application for withholding of removal and ordered his removal to Iran. Doc. 10 at 2; *see also* Doc. 10-2 at 1, 3. Although he reserved his right to appeal from the order of removal, Bejarbaneh did not do so. Doc. 4 at 2; Doc. 10-2 at 4; Doc. 10-6 at 1. Bejarbaneh's removal order therefore became administratively final on May 2, 2024, the day after his appeal was due.[1] *See* Doc. 10-2 at 4. He has been in the United States unlawfully since at least April 2019, when his student visa expired. Doc. 10 at 2; Doc. 10-1 at 2.

Bejarbaneh was detained by federal immigration authorities on July 27, 2025, in Socorro, New Mexico, and he has been detained since then. Doc. 4 at 2. Immigration and Customs Enforcement ("ICE") began the process of deporting Bejarbaneh on August 29, 2025—a full month after they detained him. Doc. 10-6 at 3. Eduardo Martinez, a Deportation Officer at the U.S. Department of Homeland Security, provided a declaration ("Martinez Declaration") stating that as of May 19, 2026, ICE Enforcement and Removal Operations ("ERO") has not received travel documents for Bejarbaneh, and has been waiting since mid-April for ICE Headquarters Removal

---

[1] Bejarbaneh states that his removal order became final on April 1, 2024. Doc. 4 at 1. That date, however, is the day the removal order was entered. *See* Doc. 10-2 at 1. Because Bejarbaneh reserved his right to appeal from that order, *see id.* at 4, the order did not become administratively final until after the time to appeal passed without Bejarbaneh filing an appeal. *See* 8 C.F.R. § 1241.1(c).

2

International Operations ("HQ RIO") to provide an update on the status of those documents. *Id.* at 3-4. The last communication between ICE and the Iranian Consulate occurred on March 9, 2026, when the Consulate confirmed receipt of a photo. *Id.* at 4. According to Officer Martinez, "the timeline to remove [Bejarbaneh] is currently unknown," but "ERO anticipates that it will be able to remove [Bejarbaneh] in the near future[.]" *Id.* He provides no foundation or support for that claim. *Id.*

## LEGAL BACKGROUND

Once a noncitizen's[2] order of removal becomes administratively final,[3] they must be detained during the following ninety days, which is known as the removal period. *See* 8 U.S.C. § 1231(a)(1)(A), (a)(2)(A). If a noncitizen does not leave or is not removed during this time, § 1231(a)(3) contemplates that they will be released "pending removal . . . subject to supervision under regulations prescribed by the Attorney General." Section 1231(a)(6) allows for the continued detention of certain noncitizens beyond the ninety-day removal period. Section 1231(a)(6) "does not permit indefinite detention," though, and is instead limited to a "period reasonably necessary to bring about that [noncitizen's] removal from the United States." *See Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). Under *Zadvydas*, six months of detention is considered "presumptively reasonable." *Id.* at 701. Following that period,[4] if the noncitizen

---

[2] "This [order] uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020); *see generally* 8 U.S.C. § 1101(a)(3) ("The term 'alien' means any person not a citizen or national of the United States.").

[3] Several circumstances can trigger finality, including the "expiration of the time allotted for an appeal if the respondent does not file an appeal within that time[.]" 8 C.F.R. § 1241.1.

[4] It is not clear whether the *Zadvydas* Court intended this presumptively reasonable six-month period to include the ninety-day removal period. *See, e.g.*, *Dupont v. Meserve*, 821 F. Supp. 3d 76, 81 n.3 (D. Me. 2026) (discussing two possible readings of *Zadvydas*: one in which the six-month period includes the ninety-day removal period and one in which it does not). Two post-*Zadvydas*

"provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. Satisfying this standard does not require that a petitioner "show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable." *Id.* at 702. "And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*. at 701.

When evaluating a noncitizen's challenge to their continued detention under § 1231(a)(6), the Court must consider "whether the detention in question exceeds a period reasonably necessary to secure removal." *Zadvydas*, 533 U.S. at 699. To that end, a noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. at 701. If removal is not reasonably foreseeable, however, "the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699-700. "In that case, . . . the [noncitizen's] release may and should be conditioned on any of the

---

opinions from the Supreme Court indicate that the six-month period begins at the same time as the ninety-day removal period (assuming the noncitizen is detained during that time), while a third supports concluding that the six-month period begins once the removal period ends. *Compare Clark v. Martinez*, 543 U.S. 371, 386 (2005) (apparently calculating the six-month period as beginning when the petitioners' "removal orders became final"), *and Jennings v. Rodriguez*, 583 U.S. 281, 298 (2018) (explaining that *Zadvydas* held that "an alien who has been ordered removed may not be detained beyond a period reasonably necessary to secure removal, and it further held that six months is a presumptively reasonable period" (citation modified))*, with Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021) (describing *Zadvydas*'s holding as limiting "how long DHS may detain an alien in the post-removal period," and explaining that the post-removal period refers to "[c]ontinued detention under [§ 1231(a)(6)]" "after 90 days have passed"). Resolution of this ambiguity is unnecessary for the disposition of this case, however, because under either interpretation, Bejarbaneh's detention has exceeded the presumptively reasonable six-month period. Federal Respondents do not challenge Bejarbaneh's assertion that "the *Zadvydas* Court adopted a 'presumptively reasonable period of detention' of six months, inclusive of the 90-day removal period." Doc. 4 at 9. Accordingly, for the purposes of this opinion, the Court proceeds with Bejarbaneh's interpretation.

various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700.

## DISCUSSION

Bejarbaneh's Petition requests immediate release from immigration detention.[5] Doc. 4 at 14. He also asks that the Court issue an order precluding the use of location tracking as a condition of supervision and prohibiting Federal Respondents[6] from re-detaining him without written notice and a hearing at which they must establish by clear and convincing evidence "that [Bejarbaneh] is a particular danger to the community or that custody is appropriate to enforce an existing removal order[.]" *Id.* Bejarbaneh additionally seeks an award of reasonable attorneys' fees and costs under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504 and 28 U.S.C. § 2412. *Id.*

The Court ordered the United States Attorney's Office for the District of New Mexico ("USAO") to respond to the Petition on behalf of Federal Respondents within ten business days. *See* Doc. 7. The USAO timely responded, arguing that Bejarbaneh has failed to demonstrate his detention violates his due process rights. Doc. 10 at 3-5. Federal Respondents further argue that the Court does not have jurisdiction to restrict Bejarbaneh's conditions of supervision, and that it should decline to shift the burden of proof in any future custody determination hearings. *Id.* at 5-7. Lastly, the USAO contends that Bejarbaneh is not entitled to an award of fees and costs under the EAJA. *Id.* at 7-8.

---

[5] Federal courts have jurisdiction under 28 U.S.C. § 2241 to hear detention challenges like the one presented here. *See Zadvydas*, 533 U.S. at 687-88 (concluding that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention"); *see also Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (providing that "[c]hallenges to immigration detention are properly brought directly through habeas").

[6] The Court uses "Federal Respondents" to refer to all Respondents in this matter other than George Dedos, Warden of the Torrance County Detention Center.

**I.      Bejarbaneh's Continued Detention Is Not Authorized by § 1231(a)(6)**

The presumptively reasonable six-month period of detention began on July 27, 2025, the day Bejarbaneh was detained, and elapsed 180 days later on January 23, 2026.[7] *See Callender v. Shanahan*, 281 F. Supp. 3d 428, 435 (S.D.N.Y. 2017) (explaining that "the six-month presumptively reasonable period of detention . . . could not have begun until" a noncitizen was detained by ICE, despite his order of removal becoming administratively final nearly a decade prior (citation modified)). Bejarbaneh's detention is now approaching eleven months in length—nearly double that which is presumptively reasonable under *Zadvydas*. Bejarbaneh has provided sound grounds to believe his removal is unlikely in the reasonably foreseeable future. Specifically, he notes that his removal order has been administratively final for two years and yet Federal Respondents have failed to remove him. Doc. 4 at 6. Bejarbaneh also points out that he has cooperated with efforts to effectuate his deportation by surrendering his passport and submitting to interviews, but ICE has yet to obtain the necessary travel documents. *Id.* Moreover, Federal Respondents have not identified a third country for removal and the ongoing hostilities between the United States and Iran, together with the corresponding absence of diplomatic relations, has created additional impediments to his deportation. *Id.* In support of his argument, Bejarbaneh cites to recent immigration habeas corpus proceedings in which the federal government has represented to other courts that removal flights to Iran have ceased due to the war. *See* Docs. 11-2 and 11-4.

Federal Respondents argue that Bejarbaneh may not only "rely on the passage of time to meet his burden" under *Zadvydas*. Doc. 10 at 5 (quoting *Gathiru v. Banieke*, No. CV 15-

---

[7] The presumptively reasonable six-month period is commonly calculated as 180 days. *See, e.g.*, *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period plus 90 days thereafter.").

4247(DSD/TNL), 2016 WL 6436621, at *2 (D. Minn. Oct. 28, 2016)). But, as discussed above, Bejarbaneh's arguments are not merely temporal in nature, and the Court concludes Bejarbaneh has met his initial burden under *Zadvydas*. *See, e.g.*, *Nerssessian v. Noem*, No. 5:26-CV-00636-DTB, 2026 WL 1084841, at *5 (C.D. Cal. Apr. 16, 2026) (observing that an Iranian petitioner demonstrated his removal to Iran was not significantly likely in the reasonably foreseeable future "particularly in light of the current state of hostilities between the United States and Iran"); *Minassi v. Noem*, No. 5:26-CV-00723-RGK-AYP, 2026 WL 923289, at *5 (C.D. Cal. Apr. 1, 2026) (taking judicial notice of the war between the United States and Iran and concluding that "it is unlikely that anyone will be removed to a country" such as Iran "with which the United States has no diplomatic relations and is currently at war").

Federal Respondents' response is insufficient to rebut that showing. At this stage, there must be some concreteness to Federal Respondents' removal plan. *See Dupont v. Meserve*, 821 F. Supp. 3d 76, 82 (D. Me. 2026) ("As Mr. Dupont's detention enters its fourth month beyond presumptive reasonableness and with the window of time constituting the reasonably foreseeable future exponentially diminishing, Respondents' plain assertions that the agency is 'working on it' without providing any material information demonstrating removal is likely in the near future, the Court cannot conclude Mr. Dupont's removal is likely to occur in the reasonably foreseeable future."). Federal Respondents must establish more than the "mere possibility" of removal. *See, e.g.*, *Yan-Ling X. v. Lyons*, 813 F. Supp. 3d 1157, 1164 (E.D. Cal. 2025) ("The phrase 'significant likelihood' requires something more than a mere possibility that removal will occur."). The Martinez Declaration concedes that ICE does not have the necessary travel documents for Bejarbaneh, that ICE's communications with the Iranian Consulate have ceased since March 9th of this year, and that the timeline for Bejarbaneh's removal remains unknown. Doc. 10-6 at 3-4.

7

As it stands, Federal Respondents have provided evidence that removal efforts are pending but have not made any showing that Bejarbaneh is likely to be deported in the reasonably foreseeable future.[8] That distinction is dispositive. *See, e.g.*, *Seretse-Khama v. Ashcroft*, 215 F. Supp. 2d 37, 50 (D.D.C. 2002) (concluding that the federal government failed to show that a Liberian national's removal was "significantly likely in the reasonably foreseeable future" when "Respondents have not demonstrated to this Court that any travel documents are in hand, nor have they provided any evidence, or even assurances from the Liberian government, that travel documents will be issued in a matter of days or weeks or even months"); *Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019) ("[I]f DHS has no idea of when it might reasonably expect Singh to be repatriated, this Court certainly cannot conclude that his removal is likely to occur— or even that it might occur—in the reasonably foreseeable future."), *abrogated on other grounds by Alvarez Ortiz v. Freden*, 808 F. Supp. 3d 579 (W.D.N.Y. 2025). On this record, the Court is left "guess[ing] whether [Bejarbaneh's] deportation might occur in ten days, ten months, or ten years." *Singh*, 362 F. Supp. 3d at 102. That is insufficient.

Federal Respondents have failed to rebut Bejarbaneh's showing that there "is no significant likelihood of removal in the reasonably foreseeable future."[9] *Zadvydas*, 533 U.S. at 701. Accordingly, the Court holds that Bejarbaneh's continued detention is no longer authorized by § 1231(a)(6).[10] *See Zadvydas*, 533 U.S. at 699. He is therefore entitled to immediate release,

---

[8] Federal Respondents have not filed any update to their Response indicating that they have received new information regarding their request for travel documents, or that they now have an anticipated removal date.

[9] Nor do they argue that he is a flight risk or danger to the community. *See generally* Doc. 10.

[10] Although detention beyond the ninety-day removal period is also authorized for noncitizens who "fail[] or refuse[] to make timely application in good faith for travel or other documents necessary to the [noncitizen's] departure or conspire[] or act[] to prevent [their] removal subject to an order

subject to reasonable conditions of supervision. *See* § 1231(a)(3); 8 C.F.R. § 241.4(j). Bejarbaneh may be re-detained if his removal becomes reasonably foreseeable, i.e., Federal Respondents receive travel documents for him and make arrangements to deport him.[11] *See* 8 C.F.R. § 241.4(l)(2)(iii).

## II.    Bejarbaneh's Additional Requests

### A.    Conditions of Supervision

Bejarbaneh requests various limitations on his conditions of release including prohibitions on location tracking. The Court declines to do so. Section 1231(a)(3) authorizes Federal Respondents to supervise Bejarbaneh's release "under regulations prescribed by the Attorney General." *See also* 8 C.F.R. § 241.4(j) (explaining that "[t]he district director, Director of the Detention and Removal Field Office, or Executive Associate Commissioner shall impose such conditions or special conditions on release as the Service considers appropriate in an individual case"). Although Bejarbaneh argues that "[t]here is no basis for any supervision" if he is released, the relevant statute and regulation provide otherwise. Doc. 11 at 9. Nor does he cite any legal authority that would support enjoining Federal Respondents from utilizing "physical restraints such as an ankle monitor or GPS tracking watch." Doc. 4 at 14. The Court will not prospectively restrict such conditions.

---

of removal," *see* § 1231(a)(1)(C), Bejarbaneh states—and Federal Respondents do not contest— that he has not impeded his removal "in any way[,]" and that § 1231(a)(1)(C) is not applicable here. *See* Doc. 4 at 10; *see generally* Doc. 10.

[11] His release also may be revoked for any of the other reasons listed in 8 C.F.R. § 241.4(2). Any revocation of Bejarbaneh's release must comply with 8 C.F.R. § 241.4(l).

**B.    Attorneys' Fees and Costs**

Bejarbaneh also seeks attorneys' fees and costs under the EAJA. *See* Doc. 4 at 14; *Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025) ("[W]e read the EAJA's broad language to unambiguously authorize fees in habeas actions challenging immigration detention."). "Under [the] EAJA, a fee award is required if: (1) plaintiff is a 'prevailing party'; (2) the position of the United States was not 'substantially justified'; and (3) there are no special circumstances that make an award of fees unjust." *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007) (quoting 28 U.S.C. § 2412(d)(1)(A)). As it stands now, the Court is unable to ascertain whether Bejarbaneh is entitled to fees because he has yet to submit "an application for fees and other expenses" and demonstrate that "the position of the United States was not substantially justified." § 2412(d)(1)(B). His present request is therefore denied without prejudice. Bejarbaneh may refile his request in accordance with the procedure set out in the EAJA and Federal Respondents will be afforded an opportunity to respond.

## CONCLUSION

The Court therefore partially grants the Petition, and orders the following:

1. Respondents must immediately release (no later than twenty-four hours from this Order's filing) Bejarbaneh from custody, subject to reasonable conditions of supervision.

2. Upon his release, Respondents must return all of his property, including any identification documentation that was in his possession when he was detained. Respondents must also promptly inform Bejarbaneh's counsel of when and where he will be released.

3. Respondents must file a status report within three business days of this Order's filing to certify their compliance. The status report shall state when and where Bejarbaneh was released. It shall also include a copy of the order of supervision that he is released under.

4. Bejarbaneh shall promptly report to the Court any failure on Respondents' part to comply with this Order.

It is so ordered.

_____
UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA